By the Court,
Barbour, J.
A careful examination of this case, with the aid of the able ^argument and points of the appellants’ counsel, has failed to convince me that the justice before whom the action was tried committed any error in his rulings or charge, of which the defendants have a right to complain. It appears to me, too, that the evidence before the jury, although in some particulars conflicting, was of such a nature as to justify the jury in finding a verdict for the plaintiff ; and the amount of such verdict is not so evidently excessive as to render it proper for the court to set the same aside for that reason. Indeed, the fact of the injury by means of the negligence of the defendants being established, judges, it seems"' to me, should hesitate long before determining that a verdict of $4500 for the loss of an arm is too large.
I am, therefore, of opinion that the judgment appealed from should be affirmed.
*362 Robertson, Ch. J.
The counsel for the defendants on the trial of this action requested the presiding justice to communicate seven propositions of law to the jury, of which three were charged as requested, and one in a modified form-.; the others were denied, except so far as they were embraced in his actual charge. The three thus refused to be charged were in substance as follows:
I. The failure of the plaintiff to look up and down the street before attempting to cross the track, to see if a car was approaching was negligence on his part, which, under the evidence, precluded his recovery.
II. The failure of the plaintiff to see or hear the car was, under the testimony, conclusive evidence of negligence on his part, precluding his recovery.
III. The fact of the plaintiff’s having fallen on the track does not affect the question of the defendant’s negligence, unless accompanied with evidence of the driver’s having actually seen him on the track, in time to have stopped the car before reaching him, of which there was none in the case.
The fourth of such propositions given to the jury as modified was as follows:
IV. To make out a case of negligence on the part of the defendants, the jury must be satified not only that the plaintiff fell on the track, and the driver’s face was so averted from his horses as not to see him as he lay on the track, but that if he had seen him the car could have been stopped by him in time to prevent a collision.
The words requested to be added to such instruction were, “ in the exercise of ordinary care,” after the words “ stopped by him.”
I have, in stating such propositions, omitted from those offered the fact thereby assumed to have been proved in the case, and arguments based on them contained therein, as not material to the decision of their legality.
I assume that every one in crossing a püblic highway, which is traversed either by a railway on which cars are drawn by horses, or by vehicles drawn by them, has a right to be pro *363 tected against injury by collision with such cars or vehicles if he crosses soon enough to avoid such cars, at the rate of walking of pedestrians, when they are moving at their ordinary rate of speed) and that he is guilty of no negligence if he does so. He is not bound to anticipate an accident which should leave him helpless on the track, either by stumbling, sickness or accidental collision with some other traveler, and is not bound to refrain from crossing, merely because the cars are near enough to him to be likely to strike him in case he should fall on the track by some such accident and lie there unable to rise ; because such result is out of the usual course of events, and not such as the pedestrian is bound, in the exercise of ordinary care, to anticipate and provide for. If, therefore, having relied on a sufficient distance of such cars or vehicles, he and they moving at ordinary speed, to prevent a collision, he is prostrated by an accident rendering him unable to rise in time to avoid them, he cannot be said to have contributed by his negligence to his own injury. In such case those having direction of the moving power of such cars or vehicles are bound to see whether any person is on the track or in their course, if it can be done with ordinary care, and if they can and have the space in which to do it, to stop such cars before reaching the fallen pedestrian.
The looking up and down the track before crossing, and the failure of the plaintiff to see or hear the cars, are matters of evidence, undoubtedly bearing on the question of negligence in the plaintiff’s conduct, either in his mode of crossing or his alacrity for rising after he fell. For a person having fallen by accident is bound to rise as quickly as he can and not lie on the track at the hazard of being injured. Of course even if a person lie down voluntarily on the track it would not justify a driver in driving over him, if he could stop his cars in time after seeing him. The learned judge who presided on the trial was therefore justified in refusing to charge either of the first two propositions requested. The defect in the third proposition is that it requires the driver actually to have seen the plaintiff instead of having been able to have seen him by the *364 exercise of ordinary care and vigilance. The fourth of such propositions was correct in omitting the words required by the defendants’ counsel to be inserted. A driver is bound at all hazards to avoid, if he can, injuring a person lying, on a track and unable to rise, by the exercise of all the means he has at his command ; and his employers are guilty of negligence, if they fail to furnish him with all the means experience could suggest to enable him to do so. It is a question of care only on their part; it is entirely one of ability on. his, to use all the means placed at his disposal with promptness. Humanity demands something more than ordinary care in exacting the utmost efforts on such an occasion.
The learned judge instructed the jury among 'other things, including the propositions already referred to which he was requsted to charge, “ that a party claiming to have been injured by the neglect of another must fail in his action, unless it appear that he was free from any negligence, without which the injury would not have happened. The greatest negligence on the part of the defendants will not cure the defect of the least negligence on the part of the plaintiff.” Also, that if they “ should believe, on the whole evidence, that if the plaintiff had looked up the street before attempting to cross it, he would have seen the car in time to have saved himself from this collision ; then his not so looking was negligence on his part, which contributed to the injury and which precludes his recovery in this action.” This both omits entirely the consideration of the question of the time consumed by reason of the accident to the plaintiff, and makes a failure to look a test of negligence; whereas it depends not on such survey, but solely on the distance of the cars at the time of the attempt to cross ; any other would make the mere perfection or use of the organs of sight by the party injured a protection to the party producing the injury. A failure by a person about to cross a street to look up and down does not give the driver of a rail car a right negligently to trample him down with impunity. Besides this, the ordinary range of vision of a person about to cross a street would probably enable him, without turning *365 his head or his eyes, in a direction up or down, to see any cars so near as to render crossing dangerous before they had passed. I apprehend that the rule for railway cars is the same as for other vehicles ; and if any one was bound, in a crowded thoroughfare, in so populous and busy a city as New York, to look up and down the street until all possibility of being run over, in case they fell down, was past, there would be but few hours in a day in which they could so safely cross. The charge, therefore, was more favorable on that point to the defendants' than they could have asked to have been given.
The learned judge also gave Other instructions highly favorable to the defendants, such as, “ in order to make out a case of negligence on the part of the defendants,” the jury “ must be satisfied, on the evidence, not only that the boy fell on the track and the driver's face was averted * ® so that he could not see him on the track, hut also, that if he had seen him, the car could have been stopped in time to prevent the collision and that “the only theory upon which the plaintiff could recover is, that when he was lying on the track and endeavoring to get up, he had not time to get up, and that the driver was the length of this (the court) room from him, his face being averted from his horses and he engaged in talking to his passengers * * and that being at the distance * * which I have stated, he might, if he had been attending to his duty, have stopped the car and prevented the accident.”
Upon the whole, the case was delivered to the jury, both on the law and facts of the case, fully as favorably to the defendants as it ought to have been, and the exceptions on their behalf to the refusals to charge are untenable. If the story of the driver he true, the charge of negligence on the part of the plaintiff is considerably shaken, if not overthrown by it, as he describes Mm as fleeing from the pursuit of a man, who was pursuing Mm ; since, in the terror of his flight and eagerness to avoid his pursuer, he may have accidentally run into danger. The bulk of the evidence seems to show that he was running, when he tipped and fell, and, therefore, his speed increased the improbability of his being struck by the car or horses. The *366 driver testified that the horses were going at the time at what he called a “ regular ” gait, which the conductor of the car stated to be at the rate of five to five and a half miles an hour. There was contradictory evidence as to the distance of the boy from the car when he fell, varying from sixty to thirty-five feet; one witness (Boember) thought it took a minute and a half after the boy fell for the car to reach him. It is somewhat singular that the plaintiff having been injured by the horses and not by the car, the inquiry was not directed to the distance of the former instead of the latter, and that no evidence was offered of the time or distance within which a oar could be stopped, going at the rate at which the one inquestion was moving at the time of the accident. Both parties seem to have left such questions to the judgment pr experience of the jury, there being no request to charge on the subject. There was evidence that the car was not actually stopped, until it had gone on the width of a street beyond the place of collision. There was also evidence to show that the driver had his face averted and was talking to á passenger ; there is none that he gave the plaintiff any warning. Upon this evidence, under the charge of the court that there was a preponderance of it in favor of the defendants, the question of negligence on the part of the plaintiff as well'as theirs was fully and fairly submitted, and there is nothing in the finding of the jury upon the evidence as to those facts which should be disturbed. The large amount of the verdict shows the' full and unanimous conviction of the jurors on all the questions.
The amount of the verdict cannot be considered as excessive, having regard to the injury to the plaintiff, and the nature of its cause as determined by the jury, and it should not be disturbed on that ground.
I concur in thinking the judgment apd order denying a new trial should be affirmed, with costs,